**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **TRAVIS ANKENY**, individually and on behalf of all other similarly situated individuals,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**SAGILITY, LLC**,<br><br>　　　　　Defendant. | Case No.:<br>Hon.: |

**COLLECTIVE AND CLASS ACTION
COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Travis Ankeny ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Sagility, LLC ("Defendant"), and states as follows:

**INTRODUCTION**

1.　　This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.* ("South Carolina Wages Act"), as well as Defendant's contractual violations.

2.　　Defendant is in the business of call center services and taking inbound calls to answer queries from customers of Defendant's clients.

3.　　In order to field these calls, Defendant employs hourly (non-exempt) call center

employees, referred to herein as "Customer Service Representatives."[1] Defendant employs the Customer Service Representatives, including Plaintiff, in a "remote" environment, working from their homes throughout the United States.

4.      Regardless of the specific job title all Customer Service Representatives: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the primary job duty of providing assistance to Defendant's clients' customers.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' Call Agents, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry. *See* **Exhibit A***,* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), available at *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.*

6.      One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

7.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-

---

[1] Throughout this Complaint the term Customer Service Representatives also refers to Plaintiff and the other Customer Service Representatives employed by Defendant.

shift and post-shift job-related activities, must be kept." *Id.*

8.    Defendant requires its Customer Service Representatives to work a full-time schedule, plus overtime. However, Defendant does not compensate the Customer Service Representatives for all work performed; instead, Defendant requires its Customer Service Representatives to perform compensable work tasks before their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system. Further, Defendant requires the Customer Service Representatives to clock out of Defendant's time keeping system when they experience technical issues and remain working while the technical issues are resolved. These policies results in Customer Service Representatives not being paid for all time worked, including overtime.

9.    In the course of performing their job responsibilities, Defendant's Customer Service Representatives use multiple computer networks, software programs, applications, and servers (including utilizing multiple user names and passwords). The time the Customer Service Representatives spend booting up and logging into these networks, software programs, applications and servers before their shifts and during the meal periods is compensable because the networks, programs, applications and servers, are an integral, indispensable, and important part of the Customer Service Representatives' work, and they cannot perform their jobs effectively without them.

10.    In particular, Defendant requires its Customer Service Representatives to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that are integral and indispensable to their jobs, including logging into multiple computer networks, software programs, applications, and servers. The Customer Service Representatives only clocked in and

received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take calls when their scheduled shifts began.

11.  In addition to this pre-shift work, Defendant also requires the Customer Service Representatives to perform unpaid mid-shift work during their unpaid meal periods. The duties performed by the Customer Representatives' during their unpaid meal periods included similar login procedures. 29 C.F.R. § 785.19(a).

12.  Further, Defendant requires the Customer Service Representatives to clock out of Defendant's time keeping system when they experience technical issues and remain working while the technical issues are resolved.

13.  Finally, Defendant violates the FLSA by failing to take its shift premiums and non-discretionary bonuses into consideration when calculating the regular rate of pay and resulting overtime rate premium paid to its Customer Service Representatives. As a result, Defendant does not pay the proper overtime rate under the FLSA.

14.  Defendant's Customer Service Representatives perform the same basic job duties and are required to log into the same or similar computer networks, software programs, applications, and servers (including utilizing multiple user names and passwords).

15.  The individuals Plaintiff seeks to represent in this action are current and former Customer Service Representatives who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of federal and state law.

16.  Defendant knew or could have easily determined how long it takes Customer Service Representatives to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

17.  Plaintiff seeks a declaration that his rights, and the rights of the putative Collective

and Class were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

### JURISDICTION

18.    This Court has subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

19.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

20.    Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

21.    Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

22.    The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

23.    The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§

2201 and 2202.

24.     The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Colorado, employs individuals within the state of Colorado, is registered with the Colorado Secretary of State, and maintains its principal place of business in the state of Colorado.

25.     Personal jurisdiction also applies to Defendant because Defendant has purposefully availed itself of the privilege of conducting activities in the state of Colorado and has established minimum contacts sufficient to confer jurisdiction over it; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

26.     Venue is proper in the District of Colorado because Defendant employs Customer Service Representatives in this District, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in this District.

## PARTIES

27.     Plaintiff, Travis Ankeny, is a South Carolina resident who has worked for Defendants as a Customer Service Representative since November 2022. Defendant compensates Plaintiff through the payment of an hourly wage, most recently at the rate of $13.00 per hour. Plaintiff Ankeny signed a consent form to join this collective action lawsuit. **Exhibit B**.

28.     Defendant, Sagility, LLC, is an Illinois limited liability company with a principal place of business at: 11000 Westmoor Circle, Suite 125, Westminster, Colorado 80021. Defendant is licensed to do business in the state of Colorado (ID number 20218176493), and its registered

agent for service of process in Colorado is Cogency Global Inc., 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112.

29.     Upon information and belief, Defendant has employed hundreds, if not thousands, of Customer Service Representatives—including Plaintiff—throughout the United States during the applicable time periods to perform services which include taking inbound calls to answer queries from customers of Defendant's clients.

## GENERAL ALLEGATIONS

30.     Defendant's Customer Service Representatives are and have been compensated pursuant to an hourly wage and typically work five days each week and up to 40 or more hours per week.

31.     Throughout his employment with Defendant, Plaintiff (and the other Customer Service Representatives) has been required to work a substantial amount of unpaid time, including overtime, as part of his job as a Customer Service Representative.

32.     Defendant requires its Customer Service Representatives to work a full-time schedule, plus overtime. However, Defendant does not compensate the Customer Service Representatives for all work performed; instead, Defendant requires its Customer Service Representatives to perform compensable work tasks before their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system. Further, Defendant requires the Customer Service Representatives to clock out of Defendant's time keeping system when they experience technical issues and remain working while the technical issues are resolved. These policies results in Customer Service Representatives not being paid for all time worked, including overtime.

33.     In the course of performing their job responsibilities, Defendant's Customer

Service Representatives use multiple computer networks, software programs, applications, and servers (including utilizing multiple user names and passwords). The time the Customer Service Representatives spend booting up and logging into these networks, software programs, applications and servers before their shifts and during the meal periods is compensable because the networks, programs, applications and servers, are an integral, indispensable, and important part of the Customer Service Representatives' work, and they cannot perform their jobs effectively without them.

34.     Defendant's Customer Service Representatives perform the same basic job duties and are required to log into the same or similar computer networks, software programs, applications, and servers (including utilizing multiple user names and passwords).

35.     Defendant's Customer Service Representatives receive substantially the same training, are subject to the same disciplinary policies, and are subject to quality assurance reviews based on the same or similar criteria.

36.     Defendant expressly instructs and trains Customer Service Representatives to have all their computer networks, software programs, applications, and servers, open and ready at the start of their scheduled shifts and before they change their status to "ready" to receive incoming calls.

37.     If Customer Service Representatives are not logged into the computer networks, software programs, applications, and servers, and ready to take calls promptly at the start of their scheduled shifts or at the end of their scheduled meal periods they are out of adherence with Defendant's policies and can be subjected to disciplinary action.

38.     The hours reflected on the Customer Service Representatives' paystubs do not accurately reflect the hours the Customer Service Representatives actually worked for Defendant.

This is because Defendant requires its Customer Service Representatives to perform compensable work tasks off-the-clock before their shift, during their unpaid meal periods, and during times when they are experiencing technical issues.

39.     As a result of Defendant's compensation policies, Plaintiff and all other Customer Service Representatives are deprived of pay for compensable time worked, including overtime.

**A.     Pre-Shift Off-the-Clock Work**

40.     Pursuant to Defendant's policies, training, and direction, Customer Service Representatives are required to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that are integral and indispensable to their jobs, including logging into multiple computer networks, software programs, applications, and servers. The Customer Service Representatives only received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take calls when their scheduled shifts began.

41.     The off-the-clock pre-shift process takes substantial time on a daily basis with said time ranging from thirteen (13) to twenty-five (25) minutes per shift. Specifically, before each shift Customer Service Representatives must undertake the following essential work tasks:

- Turn-on/warm-up their computer;

- Log in to Defendant's Virtual Private Network ("VPN") using a username and password;

- Enter dual authorization code on their cell phones via a dual authentication application;

- Enter username and password in computer to access the computer desktop;

- Wait for tasks to populate on the "Sagility" desktop and then disconnect from Defendant's VPN;

- Open an icon to access the Citrix virtual desktop using a user name, password, OKTA code and then entering a dual authorization code on their cell phones via a

dual authentication application;

- Wait substantial time while the Citrix virtual desktop connects to a server and opens;

- After the Citrix virtual desktop opens, enter another password to access the DentaQuest desktop;

- Open Cisco Jabber;

- Set up headset and microphone;

- Open internet exploer;

- Enter OKTA credentials;

- Open Amplify using a username and password;

- Open PayChex timekeeping system using a username and password (however, Defendant prohibits the Customer Service Representatives from clocking into the timekeeping system any earlier than 3 minutes prior to their scheduled start of shift time);

- Open NICE using a username and password;

- Open Knowledge Base and enter OKTA credentials;

- Open Finesse using a username and password;

- Open Microsoft Outlook, Teams, Excel and Notes; and

- Enter OKTA credentials.

42.     Defendant's Customer Service Representatives must complete this process before the start of their scheduled shifts and before fielding phone calls. Consequently, the Customer Service Representatives must arrive to work approximately thirteen (13) to twenty-five (25) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

43.     Defendant's Customer Service Representatives are not compensated for all of this time because Defendant prohibits Customer Service Representatives from clocking into its

timekeeping software more than three (3) minutes before the start of their scheduled shifts.

44.    The pre-shift off-the-clock work performed by Customer Service Representatives directly benefits Defendant, and is integral and indispensable to their job duties and responsibilities as Customer Service Representatives.

**B.**    **Meal Period Off-the-Clock Work**

45.    Defendant promises each Customer Service Representatives a thirty (30) minute unpaid meal period during each shift.

46.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 C.F.R. 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

47.    Defendant does not provide the Customer Service Representatives with a legitimate bona fide meal period because it requires the Customer Service Representatives to return to their computer stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking customer calls promptly at the end of their scheduled meal periods.

48.    If Customer Service Representatives are not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal breaks, they are considered "out of adherence" and can be subjected to disciplinary action.

49.     The work performed by Customer Service Representatives during their unpaid meal periods takes substantial time on a daily basis with said time ranging from 1 to 2 minutes per shift, or more, depending on whether they were timed out of their computer programs during their meal periods.

**C.      Technical Issues Off-the-Clock Work**

50.     Additionally, in the course of performing their jobs, the Customer Service Representatives regularly experience technical issues with their computer systems which prohibits them from taking calls on behalf of Defendant's customers.

51.     In these situations, Defendant directs the Customer Service Representatives to clock-out of Defendant's timekeeping system during the time period while the technical issue is being resolved. The Customer Service Representatives can spend up to one (1) hour or longer working with Defendant's technical team to resolve the problem(s).

52.     Despite requiring the Customer Service Representatives to clock-out of its timekeeping system, Defendant requires the Customer Service Representatives to remain working while the technical issues are resolved (including, among other things, to spend time on their computers and phones with Defendant's technical team).

53.     Defendant does not compensate the Customer Service Representatives for the time they spend working off-the-clock in connection with the technical issues.

54.     Defendant is aware of the time Customer Service Representatives work with Defendant's technical team to resolve the technical issues, and Defendant can pay Customer Service Representatives for this time, but does not.

**D.      Defendant's Regular Rate Violations**

55.     In addition to the base rate of pay, Defendant incorporates various routine and non-discretionary compensation into its payment structure. For example, Defendant pays the Customer

Service Representatives shift premium pay, non-discretionary bonuses, and other forms of remuneration.

56.     However, Defendant fails to take its shift premiums and non-discretionary bonuses into consideration when calculating the Customer Service Representatives' regular rate of pay and resulting overtime rate premium. As a result, Defendant does not pay the proper overtime rate under the FLSA.

57.     As non-exempt employees, Defendant's Customer Service Representatives are entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

58.     Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

59.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

60.     Defendant's shift premiums, non-discretionary bonuses, and other remuneration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

61.     There is a statutory presumption that remuneration in any form must be included in

the regular rate calculation.  Defendants carry the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)).  Thus, determining the regular rate starts from the premise that all payments made to Defendant's Customer Service Representatives for work performed are included in the base calculation unless specifically excluded by statute.

62.    Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945).  The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages.  Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

63.    Plaintiff's "total remuneration" included not only his base hourly pay, but also any shift premiums and non-discretionary bonuses.  Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

64.    However, Defendant fails to incorporate any shift premiums and non-discretionary bonuses into its hourly employees' regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

65.    Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff and those

similarly situated are entitled to overtime pay equal to 1.5 times their regular rate of pay for hours worked in excess of forty (40) hours per week.

66.    Plaintiff and those similarly situated have regularly worked in excess of 40 hours a week and have been paid some overtime for those hours but at a rate that does not include Defendant's shift premiums and non-discretionary bonuses as required by the FLSA.

67.    For example, Plaintiff's pay stub for the pay period 1/2/2023 through 1/15/2023 shows 78.18 hours of work, a base hourly rate of $13.00, and gross earnings of $1,019.86 inclusive of 2.48 in shift premium pay. **Exhibit C**. However, Plaintiff's overtime rate did not account for the shift premium pay and, therefore, violated the FLSA.

68.    Defendant also paid Plaintiff and the Customer Service Representatives, additional non-discretionary remuneration that Defendant failed to include in the regular rate calculation.

69.    To the extent Defendant's non-discretionary bonuses were required to be allocated among multiple workweeks for purposes of calculating the FLSA regular rate (*see e.g.*, 29 C.F.R. § 778.209), Defendant also failed to incorporate those bonuses into its calculations.

70.    To the extent that any of Defendant's shift premium compensation paid to Plaintiff, and those similarly situated, could be qualified and applied as a credit under 29 U.S.C. §§ 207(7)(h), those credits may only be applied to the same workweek or work period in which the premiums were paid. *Herman v. Fabri-Centers of Am., Inc*., 308 F. 3d 580, 590-92 (6th Cir. 2002).

71.    In a Department of Labor Opinion Letter dated December 23, 1985, the Deputy Administrator stated: "We wish to point out that the surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods." *Opinion Letter Fair Labor Standards Act* (flsa), 1985 WL 304329 at 3 (1985).

15

72.     As a result of its *prima facie* FLSA violations, Defendant is liable to Plaintiff and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and expenses, interest, court costs, and any other relief deemed appropriate by the Court.

### E.     Defendant Benefitted from the Uncompensated Off-the-Clock Work

73.     At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and similarly situated employees in connection with the above-described pre-shift, meal period, and technical issues activities performed by Customer Service Representatives.

74.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of the Customer Service Representatives.

75.     At all relevant times, Defendant was able to track the amount of time Customer Service Representatives spent in connection with the off-the-clock pre-shift, meal period, and technical issues activities. However, Defendant failed to do so and failed to compensate Customer Service Representatives for the off-the-clock work they performed.

76.     At all relevant times, the Customer Service Representatives were non-exempt hourly employees, subject to the requirements of the FLSA.

77.     At all relevant times, Defendant used its attendance and adherence policies against the Customer Service Representatives in order to pressure them into performing the off-the-clock pre-shift, meal period, and technical issues activities.

78.     Defendant expressly trained and instructed Customer Service Representatives to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") at the moment their shifts began.

79.     At all relevant times, Defendant's policies and practices deprived Customer Service

Representatives of wages owed for the off-the-clock pre-shift, meal period, and technical issues activities they performed. Because Defendant's Customer Service Representatives typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

80.    Defendant knew or should have known that the time spent by Customer Service Representatives in connection with the off-the-clock pre-shift, meal period, and technical issues activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, Defendant's obligation to compensate the Customer Service Representatives for the off-the-clock work performed was clear.

81.    Despite knowing Customer Service Representatives performed off-the-clock work before and during their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

82.    Unpaid wages related to the off-the-clock work described herein is owed to the Customer Service Representatives at the FLSA mandated overtime premium of one and one-half their regular hourly rate because the Customer Service Representatives regularly worked in excess of 40 hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

83.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> **All current and former Customer Service Representatives who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.**

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

84.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate

Plaintiff and other similarly situated Customer Service Representatives.

85.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

86.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond 40 hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than 40 hours, such as 38-40 hours, but actually work in excess of 40 hours.

87.    Defendant assigns and/or is aware of all of the work that Plaintiff and the members of the FLSA Collective perform.

88.    Upon information and belief, Defendant utilizes a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

89.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay  its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek;

    b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendants; and

    c.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, the proper amount of overtime wages taking into account their "regular rate of pay" as proscribed by the FLSA and its attendant regulations.

90.     Defendant is aware or should be aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of 40 per workweek.

91.     Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

92.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

93.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues - the amount of compensation due in connection with Defendant's failure to compensate at the regular rate of pay and related to the off-the-clock pre-shift, meal period, and technical issues activities - do not vary substantially among the proposed FLSA Collective members.

### RULE 23 SOUTH CAROLINA CLASS ACTION ALLEGATIONS

94.     Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Classes (hereinafter collectively referred to as the "Rule 23 South Carolina Class"):

**The Rule 23 South Carolina Class is defined as follows:**

> *All current and former Customer Service Representatives who worked for Defendant in South Carolina during the applicable statutory period.*

95.     Excluded from the Rule 23 South Carolina Class are Defendant's exempt

executives and administrative and professional employees, including computer professionals and outside sales persons.

96.    *Numerosity:* The putative Class members are so numerous that joinder of all members in the case would be impracticable.

97.    *Commonality/Predominance:* There is a well-defined community of interest among Class members and common questions of *both* law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions, include, but are not limited to, the following:

a.    Whether the off-the-clock time worked by the Rule 23 South Carolina Class members in connection with the activities described in this Complaint is compensable time;

b.    Whether the Rule 23 South Carolina Class members are owed wages for the off-the-clock time worked in connection with the activities described in this Complaint;

c.    Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 South Carolina Class member regular wages or minimum wage for each non-overtime hour worked;

d.    Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 South Carolina Class member overtime compensation for each overtime hour worked; and

e.    Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 South Carolina Class.

98.    *Typicality:* Plaintiff's claims are typical of claims of the Rule 23 South Carolina Class they seek to represent in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's similar policies, practices, and course of conduct as all other Class members' claims and Plaintiff's legal theories are based on the same or similar facts.

99.    *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23

South Carolina Class and have retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 South Carolina Class.

100.     *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for the Rule 23 South Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

101.     This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

102.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

103.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

104.     Plaintiff bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and

on behalf of:

> ***All current and former Customer Service Representatives who worked for Defendant at any time during the applicable statutory period.***

 (hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

105.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

106.    There is a well-defined community of interest among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

a.    Whether the time Rule 23 Nationwide Class members spent on pre-shift activities prior to clocking in for each shift is compensable time;

b.    Whether the time Rule 23 Nationwide Class members spent on meal period activities subsequent to clocking out for each shift is compensable time;

c.    Whether the time Rule 23 Nationwide Class members spent on technical issues activities prior to clocking in for each shift is compensable time;

d.    Whether Rule 23 Nationwide Class members are owed wages for time spent performing off-the-clock work activities, and if so, the appropriate amount thereof; and

e.    Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract and/or unjust enrichment.

107.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result

of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from

the same policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class

members' claims, and their legal theories are based on the same legal theories as all other Rule 23

Nationwide Class members.

108.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide

Class and has retained counsel who are qualified and experienced in the prosecution of nationwide

wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or

conflicting with, the interests of the Rule 23 Nationwide Class.

109.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23

Nationwide Class members to prosecute individual actions of their own given the relatively small

amount of damages at stake for each individual along with the fear of reprisal by their employer.

Prosecution of this case as a Rule 23 Nationwide Class action will also eliminate the possibility of

duplicative lawsuits being filed in state and federal courts throughout the nation.

110.    This case will be manageable as a Rule 23 Nationwide Class action. Plaintiff and

his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked

computer and payroll systems that will allow the class, wage, and damages issues in this case to

be resolved with relative ease.

111.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification

is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct.

1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose

suit meets the specified criteria to pursue his claim as a class action").

112.    Because Defendant acted and refused to act on grounds that apply generally to the

Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule

23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) COLLECTIVE ACTION)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

113.    Plaintiff re-alleges and incorporate all previous paragraphs herein.

114.    At all times relevant to this action, Defendant was engaged in interstate commerce,

or in the production of goods for commerce, as defined by the FLSA.

115.    At all times relevant to this action, Plaintiff and the FLSA Collective were

"employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

116.    Plaintiff and the FLSA Collective, by virtue of their job duties and activities

actually performed, are all non-exempt employees.

117.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged

in the production of goods for commerce; or (3) were employed in an enterprise engaged in

commerce or in the production of goods for commerce.

118.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and

the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g)

of the FLSA.

119.    At all times relevant to this action, Defendant required Plaintiffs and the FLSA

Collective to perform no less than fourteen (14) minutes and as much as twenty-seven (27) minutes

of off-the-clock work per shift (and more on days when they performed technical issues activities),

but failed to pay these employees the federally mandated overtime compensation for the off-the-

clock work.

120.    The off-the-clock work performed every shift by Plaintiff and the FLSA Collective

is an essential part of their jobs.

121.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of one and one-half (1.5) times each employee's regularly hourly wage, including the shift differential where applicable. 29 U.S.C. § 207.

122.    In workweeks where Plaintiff and other FLSA Collective members time cards reflect thirty-eight (38) to forty (40) hours, the uncompensated off-the-clock work time under forty (40) hours should be paid at regular time, and all additional time, assuming it adds up to over forty (40) hours, should have been paid at the federally mandated rate of one and one half (1.5) times each employee's regularly hourly wage, including the shift differential where applicable. 29 U.S.C. § 207.

123.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for its Customer Service Representatives to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

124.    The Fair Labor Standards Act and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's shift premiums and non-discretionary bonuses do not fall into any of those exceptions.

125.    Defendant failed to include shift premiums and non-discretionary bonuses into the regular rate of pay for Plaintiff and all others similarly situated when calculating overtime rates. The failure to include this remuneration in overtime computations violates Section 7(a) of the FLSA, because Defendant's Customer Service Representatives are working overtime without

being paid the statutorily required rates. 29 U.S.C § 207(a).

126.    At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA.

127.    As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members at a rate not less than one and one half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

128.    Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

129.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), interest, plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 SOUTH CAROLINA CLASS ACTION**
**VIOLATIONS OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT, S.C. CODE**
**ANN. §§ 41-10-10, *et seq.* ("SOUTH CAROLINA WAGES ACT")**

130.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

131.    The South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.*; provides that "[e]very employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A).

132.    Pursuant to S.C. Code Ann. § 41-10-40(C), an "employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions as required by subsection (A) of Section 41-10-30."

133.    Pursuant to S.C. Code Ann. § 41-10-50, "[w]hen an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee within forty-eight hours of the time of separation or the next regular payday which may not exceed thirty days."

134.    Pursuant to S.C. Code Ann. § 41-10-80(C), an employee who has not been paid in accordance with the South Carolina Payment of Wages Act "may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."

135.    At all times relevant to the action, Defendant was an employer covered by the wage mandates of the South Carolina Wages Act, and the Rule 23 South Carolina Class are employees entitled to the South Carolina Wages Act's protections.

136.    The South Carolina Wages Act entitles employees to compensation for every hour

worked in a workweek.

137.    Defendant violated the South Carolina Wages Act by regularly and repeatedly failing to compensate the Rule 23 South Carolina Class for the time spent on the work activities described in this Complaint.

138.    Defendant violated the South Carolina Wages Act by regularly and repeatedly failing to compensate the Rule 23 South Carolina Class for the time spent on the work activities described in this Complaint.

139.    Defendant's uniform policy and practice, as described above, left Defendant without any bona fide dispute as to why it failed to pay Plaintiff and the Rule 23 South Carolina Class for all time worked and failed to pay Plaintiff and the Rule 23 South Carolina Class all wages due to them within the time constraints set forth in S.C. Code Ann. § 41-10-50.

140.    As a result, Plaintiff and the Rule 23 South Carolina Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 South Carolina Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the South Carolina Wages Act in an amount to be proven at trial.

<u>**COUNT III**</u>
<u>**RULE 23 NATIONWIDE CLASS ACTION**</u>
<u>**BREACH OF CONTRACT**</u>

141.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

142.    At all times relevant to this action, Defendant had a contract with Plaintiff and every other Nationwide Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate.

143.    Each Nationwide Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepared as part of their regular business activities.

144.    Plaintiff and every other Nationwide Rule 23 Class member performed under the

contracts by doing their jobs and carrying out the off-the-clock activities that Defendant required
or accepted.

145.     By not paying Plaintiff and every other Nationwide Rule 23 Class member the
agreed upon hourly wage for all of the work they performed each shift, Defendant systematically
breached its contracts with Plaintiff and each member of the Nationwide Rule 23 Class.

146.     Plaintiff and the Nationwide Rule 23 Class members' remedies under the FLSA are
inadequate in this case to the extent Defendant paid them more than the federally mandated
minimum wage of $7.25 per hour but less than forty (40) hours per week (i.e., pure gap time
claims).

147.     Defendant also breached its duty of good faith and fair dealing by failing to keep
track of the time Plaintiff and other Nationwide Rule 23 Class members spent performing off-the-
clock activities, which is a fundamental part of an employer's job.

148.     As a direct and proximate result of Defendant's breaches of the contracts alleged
herein, Plaintiff and every other member of the Nationwide Rule 23 Class have been damaged, in
an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

149.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

150.     This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P.
8(d)(2)-(3).

151.     At all times relevant to this action, Defendant promised Plaintiff and every other
Nationwide Rule 23 Class member a pre-established regular hourly rate in consideration of the
work duties Plaintiffs and the Nationwide Rule 23 Class members performed for the benefit of
Defendant.

152.    Plaintiff and every other Nationwide Rule 23 Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

153.    By not paying Plaintiff and every other Nationwide Rule 23 Class member the agreed upon hourly wage for the pre-shift, mid-shift, and technical disconnection off-the-clock work they performed each shift, Defendant was unjustly enriched.

154.    Plaintiff and the Nationwide Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

155.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Nationwide Rule 23 Class member and enjoyed the benefits derived therefrom.

156.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Nationwide Rule 23 Class member to finance its various business ventures or pay its equity owners.

157.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Nationwide Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiff and the Nationwide Rule 23 Class for the same.

158.    Plaintiff and the Nationwide Rule 23 Class suffered detriment as a result of Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Nationwide Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

159.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Nationwide Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the putative FLSA Collective,

the Rule 23 South Carolina Class, and the Rule 23 Nationwide Class, request judgment as follows:

a.　　Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.　　Certifying this action as a class action (for the Rule 23 South Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's South Carolina state law claims (Count II);

c.　　Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts III and IV);

d.　　Designating Plaintiff as the representative of the FLSA collective action, the Rule 23 South Carolina Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

e.　　Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.　　Declaring Defendant's violation of the FLSA was willful;

g.　　Declaring Defendants violated the state wage and hour laws/acts of South Carolina, as cited herein;

h.　　Declaring Defendant's violations of the state wage and hour laws/acts of the states of South Carolina, as cited herein, were without any *bona fide* dispute;

i.　　Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant were unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

j.　　Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA collective, the Rule 23 South Carolina Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated or treble damages available by law;

k.　　Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by federal and state statutes;

l.　　Awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.　　Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Respectfully Submitted,

Dated: April 3, 2023                    /s/ *Kevin J. Stoops*
                                        Kevin J. Stoops
                                        Alana Karbal
                                        SOMMERS SCHWARTZ, P.C.
                                        One Towne Square, 17th Floor
                                        Southfield, Michigan 48076
                                        Phone: (248) 355-0300
                                        kstoops@sommerspc.com
                                        akarbal@sommerspc.com

                                        Bruce E. Miller
                                        BRUCE E. MILLER, P.A.
                                        147 Wappoo Creek Dr., Suite 603
                                        Charleston, South Carolina 29412
                                        Phone: (843) 579-7373
                                        bmiller@brucemillerlaw.com

                                        Brett M. Ehman
                                        BRETT M. EHMAN ATTORNEY AT LAW
                                        2971 W. Montague Ave., Suite 203
                                        North Charleston, South Carolina 29418
                                        Phone: (843) 225-3607
                                        brett@ehmanlaw.com

                                        *Attorneys for Plaintiff and the putative Collective/Classes*